Roy F. Wilcox v. Commissioner.
Wilcox v. Commissioner
Docket No. 2676.
United States Tax Court
1946 Tax Ct. Memo LEXIS 233; 5 T.C.M. (CCH) 412; T.C.M. (RIA) 46072; March 28, 1946
*233 John B. Beman, Esq., 830 Petroleum Bldg., Los Angeles, Calif., for the petitioner. Byron M. Coon, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: Respondent determined an income tax deficiency for 1940 of $2,069.34. The issue is whether petitioner received additional income of $3,925.75 during the taxable year. This sum is alleged to be income of petitioner's wife representing a part of her community interest in petitioner's earnings from personal services rendered in 1940. Findings of Fact Petitioner is engaged in the nursery business as a partner in the firm of Roy F. Wilcox & Company. His principal office is in Montebello, Los Angeles County, California. His income tax return for 1940 was filed with the collector for the sixth district of California. In 1919 petitioner, his wife, Frances Wilcox, and his father-in-law, Oscar Keeline, were the partners in Roy F. Wilcox & Company. In 1929 Frances Wilcox died leaving two sons her surviving. Thereafter petitioner and Keeline conducted the nursery business as equal partners. In 1934 petitioner married his present wife, Margaret Whitney Wilcox, with whom he was living throughout *234 the taxable year. Petitioner had no substantial assets in 1919 other than his partnership interest which was his principal source of income during the taxable year and prior thereto. Keeline had assets other than his investment in the partnership and was not dependent at any time material hereto upon partnership assets or income. Petitioner had been the manager of the partnership business since its inception. The major responsibility for the conduct of the business rested upon him as Keeline was 82 years of age in 1940. He devoted substantially all of his time to the business. Keeline's services were largely advisory although when petitioner was away Keeline conducted the business. Petitioner and Keeline lived in their own homes on the business property. During the early years of the partnership when the business was expanding the net income averaged around $20,000 to $25,000 per year. During these years and until about 1932 petitioner withdrew $1,000 a month from the business for his own use. Keeline agreed that petitioner's services to the partnership entitled him to draw out that much more than Keeline withdrew therefrom. In or about 1932 all withdrawals by employees were reduced *235 and petitioner reduced his own withdrawls to $750 per month. The partnership net income began to substantially exceed petitioner's withdrawals in 1936 and 1937. At the end of 1936 and 1940 the capital value of the partnership was about $165,000 and $235,000, respectively. In 1935 when business began to get better petitioner discussed with Keeline the matter of again withdrawing $1,000 per month. Keeline, while recognizing and approving petitioner's management of the business, felt that the withdrawals should remain at $750 and that the remaining earnings should be left in the business for the benefit of his grandsons. There has been no further discussion between petitioner and Keeline respecting a change in the amount of petitioner's withdrawals. During the period 1935 to 1940, inclusive, petitioner continued to withdraw $750 per month. Keeline made no withdrawals at any time in connection with his services to the partnership; sometimes he withdrew his distributive share of partnership net income and sometimes he added it to his investment in the partnership. A partnership agreement executed by petitioner and Keeline on December 31, 1935, which was in effect during the taxable *236 year, provided in part as follows: IT IS FURTHER UNDERSTOOD AND AGREED that each of the partners shall devote to said business such time and effort as shall be mutually agreed upon, and shall receive as compensation for his services such remuneration as may be mutually agreed upon between the parties. [Italics supplied.] On his income tax return for the taxable year petitioner computed the partnership earnings attributable to his personal services and to his capital investment pursuant to the provisions of G.C.M. 9825, C.B.X-2, p. 146. This computation showed that $16,851.51, out of his total income from the partnership of $30,236.44, was attributable to his personal services and $13,384.93 was attributable to his capital investment. Petitioner reported his partnership income as $13,384.93 plus one-half of $16,851.51, or $21,810.69; his wife reported one-half of $16,851.51, or $8,425.75. Respondent determined that the $9,000 withdrawn by petitioner during the taxable year represented a reasonable compensation for his services to the partnership, one-half of which was taxable to petitioner and one-half to his wife. Accordingly he increased petitioner's income by *237 $3,925.75 ($8,425.75 - $4,500), and determined the deficiency herein. The $9,000 withdrawn by petitioner during the taxable year was received as compensation for services mutually agreed upon between the partners. Opinion The question for decision is how much of the partnership income realized by petitioner during the taxable year should be attributed to his personal services. Partnership income not attributable to personal services concededly is petitioner's separate income arising from his separate property. On his income tax return for 1940 petitioner attributed $16,851.51 of his partnership income to his personal services, which, as community income, was reported one-half by him and one-half by his wife. The respondent determined that petitioner received only $9,000 for his personal services to the partnership during 1940 and that only this portion of the partnership income represented income of the community. We agree with respondent's determination. The partnership agreement provides that each of the partnerships shall receive as compensation for his services such remuneration as may be mutually agreed upon between them. At the time this agreement was executed petitioner *238 was receiving $750 per month from the partnership in recognition of the services he was rendering to it. At some time during the year 1935 he had discussed with his partner the matter of increasing his withdrawals to $1,000 per month. He could not obtain Keeline's consent to the increase. His testimony shows that he has had no further discussion with Keeline on the matter. In view of the testimony and the provisions of the partnership agreement we must construe the mutual agreement between the partners to be that petitioner's compensation was $750 per month. Whether his services were reasonably worth more or less would seem to be immaterial. The mutual agreement was that he should receive $9,000 per year, and so far as we can see that is the end of the matter. Any resort to a formula, such as that in G.C.M. 9825 [X- 2 CB 146], is wholly unnecessary, where pursuant to a written contract, petitioner agreed that the compensation he was to receive for his services was to be determined by mutual agreement with his partner. We believe no useful purpose would be served by reviewing the numerous authorities cited by the parties in view of our conclusion on the ultimate *239 question of fact. Decision will be entered for the respondent.